UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LYNN S.,

                    Plaintiff,

      -v-

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

25-CV-00238-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.

Plaintiff Lynn S.[1] ("Plaintiff") brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 9) is denied, and defendant's motion (Dkt. No. 14) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

**BACKGROUND**[2]

Plaintiff filed applications for DIB and SSI in January 2022, alleging disability beginning on October 10, 2021. (Administrative Transcript ["Tr."] 306–19, 320–29). Because Plaintiff later returned to work full-time on May 15, 2023, she requested a closed period of disability, from October 10, 2021, until May 15, 2023. (Tr. 19, 36).

After Plaintiff's claims were denied, a hearing was held on March 12, 2024, before Administrative Law Judge John Benson. (Tr. 32–67). Plaintiff was represented by counsel at the hearing, and a vocational expert testified. The ALJ issued a decision on May 31, 2024, finding that Plaintiff was not disabled at any time from her alleged onset date through the date of the decision. (Tr. 13–31). That decision became the final decision of the Commissioner after the Appeals Council denied Plaintiff's request for review. (Tr. 1–7). Plaintiff then filed this action.

**DISCUSSION**

I.      *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. Id.

II.     Standards for Determining "Disability" Under the Act

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." Id. §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." Id. §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." Id. §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." Id. §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. §§404.1520(c),

- 4 -

416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. Id. §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. Id. §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. Id. §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. Id. §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." Id. §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." Id. §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. Id. §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education,

and work experience, the claimant "can make an adjustment to other work." Id. §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. Id. §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. Id. §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one of the five-step sequential evaluation process, the ALJ found that Plaintiff had been engaging in "substantial gainful activity" since May 15, 2023 (TR. 19). However, because she did not engage in substantial gainful activity from October 10, 2021, through May 14, 2023, the remaining findings address that closed period. (*Id.*) Plaintiff met the insured status requirements through June 30, 2025. (*Id.*)

At step two, the ALJ found that Plaintiff had the following severe impairments: obesity; osteoarthritis; obstructive sleep apnea; coronary artery disease; and cervical spondylosis. (Tr. 19-21). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21). Before moving to step four, the ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except she requires the option to change positions at 30-minute intervals with the ability to remain in the new

position for up to two minutes before returning to the previous position. (Tr. 21-24). Additionally, the ALJ found that Plaintiff could occasionally climb stairs, balance, stoop, crouch, and kneel but never crawl or climb ladders. (*Id.*) The ALJ also included environmental restrictions and limited Plaintiff to no more than occasional operation of foot controls or pushing/pulling with her lower extremities. (*Id.*)

At step four, the ALJ found that Plaintiff was unable to perform past relevant work during the period at issue (Tr. 24–25.)

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 25-26). Consequently, the ALJ found that Plaintiff had not been under a disability from October 10, 2021, the alleged onset date, through the date of his decision. (Tr. 25).

IV.    *Plaintiff's Challenges*

Plaintiff's first challenge is that the ALJ erred at step two by failing to evaluate the severity of multiple other impairments, including lumbar spine issues, right knee issues and bilateral arm pain/numbness. The Court finds this argument without merit.

An error at step two may be harmless if the ALJ identifies other severe impairments at step two, proceeds through the remainder of the sequential evaluation process and specifically considers the "nonsevere" impairments during subsequent steps of the process. *Trombley v. Berryhill,* No. 1:17-CV-00131-MAT, 2019 WL 1198354, at *6 (W.D.N.Y. Mar. 14, 2019); *Wilson v. Colvin,* No. 13-CV-6286P, 2015 WL 1003933, at *20 (W.D.N.Y. Mar. 6, 2015) (*citing See Reices–Colon v. Astrue,* 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) ).  That is what happened here.

After finding the Plaintiff's underlying conditions—obesity, osteoarthritis, and cervical spondylosis—to be severe at step two, the ALJ then went on to discuss those musculoskeletal impairments in greater detail later in the decision. (Tr. 19, 22). Specifically, he noted that a September 2021 cervical spine scan showed left foraminal narrowing at C4-5, a July 2022 x-ray of Plaintiff's right knee showed moderate patellofemoral and mild tibiofemoral joint space comparative degenerative changes, and a lumbar spine x-ray showed mild-to-moderate multilevel degenerative changes. (Tr. 22–23, 791, 916, 1178). The ALJ also discussed how, "despite these abnormalities, the claimant's treatment record documents relatively conservative treatment," consisting of pain medication (Gabapentin) and physical therapy, with no discussion of surgery or injection therapy. (Tr. 23). He also noted that Plaintiff was discharged from physical therapy in December 2022, after attending just eight visits between September 27, 2022, and October 21, 2022. (Tr. 23, *see* Tr. 1109–12). In addition, the ALJ discussed Plaintiff's generally normal examination findings, which included normal range of motion and strength on multiple occasions. (Tr. 23). As examples, he highlighted examinations from November 2021 and March 2022, which showed full range of motion in all joints and muscle strength that was five out of five. (Tr. 23, citing Tr. 751, 769; *see also* Tr. 741 (normal exam), 764 (normal exam except for bony crepitus in knees), 831–32 (normal exam except for obesity), 838–39 (normal exam except for mild cervical spine tenderness and tenderness on the skin of lower extremities), 849–50 (normal exam), 857 (normal exam), 876 (normal exam), 1106 (normal exam except for tenderness and restricted range of motion in left shoulder, and positive empty can test on left), 1122 (normal exam apart from obesity)).

In the end, the ALJ assessed functional limitations that accounted for the additional impairments now asserted by Plaintiff. For example, the ALJ found that Plaintiff could engage in no more than occasional stairclimbing, stooping, kneeling, and crouching. (Tr. 21.) Those limitations were based on—but ultimately more restrictive than—the findings made by the state agency medical consultants, who explained that "the postural restrictions are given *due to back and neck pain.*" (Tr. 24, 78, 95, 118, 136 (emphasis added)). In addition to those postural limitations, the ALJ included in the RFC finding an option to change positions at 30-minute intervals, which further addressed Plaintiff's occasional reports of low-back pain. (Tr. 21). As for Plaintiff's reports of knee pain, the ALJ limited her to occasional operation of foot controls, occasional pushing/pulling with her lower extremities, and no crawling.[3] (Tr. 21, 24).

Based on the foregoing, even if the ALJ should have separately evaluated Plaintiff's lumbar spine issues, right knee issues, and arm pain/numbness at step two, remand is not required because he continued the sequential evaluation and considered and accounted for those symptoms in the RFC formulation.[4] *See, e.g., O'Connell v.*

---

[3] There is not adequate support in the record to substantiate an impairment based on "bilateral" arm symptoms. Plaintiff reported symptoms in the *right* arm on just one occasion (Tr. 847), which is well short of the 12-month duration requirement for medically determinable impairments. 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.").

[4] Although Plaintiff suggests that the ALJ should have also included limitations to address her bilateral arm pain/numbness, there is no medical opinion or assessment in the record that recommends the inclusion of manipulative limitations (e.g., reaching, handling). (*See* Tr. 7–79, 94–96, 116–18, 134–36, 787–92, 790). Therefore, Plaintiff has not carried her burden "to prove a more restrictive RFC than the RFC assessed by the ALJ." *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 650 (W.D.N.Y. Jan. 30, 2020); *accord Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).

*Colvin*, 558 F. App'x 63, 64 (2d Cir. 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013); *Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010).

Plaintiff's next challenge is that the ALJ erred by including a highly specific sit/stand limitation in the RFC based on his own lay opinion and not tethering this limitation to evidence in the record. The Court finds this argument unpersuasive.

The Court finds that there exists substantial evidence in the record upon which the ALJ relied to support the sit/stand limitation he included in Plaintiff's RFC. In addressing Plaintiff's musculoskeletal impairments, the ALJ stated that he had "taken the claimant's obesity into account in reaching the conclusion that she is limited to sedentary exertion with restricted performance of postural maneuvers." (Tr. 23). He also relied on the opinion of consultative examiner Dr. John Schwab, D.O., that Plaintiff had a marked limitation in "prolonged exertion." (Tr. 24). The ALJ concluded that based on Plaintiff's "multiple physical impairments," a positional change limitation was appropriate. (*Id.*). As to the time limit for the sit/stand limitation, the ALJ determined that based on Plaintiff's "generally conservative treatment," "no greater" time restriction was supported by the record. (*Id.*).

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is denied and defendant's motion for judgment on the pleadings (Dkt. No.14) is granted. The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:        August 7, 2026
              Buffalo, New York

                                        _____
                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge